J. Curtis Edmondson, CSB# 236105
Law Offices of J. Curtis Edmondson
3699 NE John Olsen Ave
Hillsboro OR 97124
Phone: 503-336-3749
Email: jcedmondson @edmolaw.com
Attorney for Plaintiff Ramji Govindarajan

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMJI GOVINDARAJAN, <br><br> Plaintiff, <br><br> v. <br><br><br> Government Employees Insurance Company aka GEICO, a Maryland Corporation, <br> Defendant. | Case No.: 3:18-cv-07797 <br><br> **DEFENDANT'S OPPOSTION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** <br> **(ECF 33-36)** <br> Hon. Jacqueline Scott Corley <br> Hearing Date: February 6, 2020 <br> Hearing Time: 9:00 am <br> Courtroom E <br> 15th Floor |

## I. SUMMARY OF THE OPPOSITION

This is a duty to defend case that involved an unfounded claim of libel. Govindarajan had purchased an Umbrella Policy that covers defamation. When Govindarajan was sued, he tendered his Umbrella Policy, and the defense was denied by GEICO. Govindarajan paid for his own legal defense in excess of $350,000.00. Although GEICO refused to defend, they paid outside counsel to "monitor" the three week trial over a two month period.

GEICO's argues that the Posts on RateMDs.com constitutes the only "*personal injury ... which takes place during the time this policy is in force*" (, ECF 33-1, lns 11-12).   GEICO cherry picks their policy language.

GEICO's umbrella policy defines "occurrence" as:

> 8. "Occurrence" including a continuous or repeated exposure to conditions which results in personal injury or property damage neither expected or intended by you.

The plain language of the policy language provides coverage when there is: "continuous or repeated exposure" and "property damage" that occurs during the policy period.   While the Posts were made before the policy date, the occurrence of the actual tort and damage occurred during the policy period.   Specifically, the Posts first became an actionable tort with alleged damage when Shelly Payne, a New Zealand hotelier viewed the posts for the first time in June, 2016, i.e. during the policy coverage period.

Publication, by itself, is not the same as defamation.  The tort of defamation requires publication to a third party that understands the defamatory meaning of the statement.  The complaint and the first amended complaint in the underlying case simply reiterates the Posts in the pleadings, but the underlying pleadings did not identify when the Posts resulted in an actionable cause for defamation.  Likewise, GEICO in their MSJ, simply discuss the Posts as if they are defamatory simply by the act of publication.  But publication is only an element of the tort of defamation, mere publication of falsehood does not constitute a tort under California law.

When the policy was tendered to GEICO in May, 2017, the date of when the libel occurred in the underlying case were unknown.  GEICO had a duty to defend until it was clear that the facts demonstrated there was no duty to defend.

## II.     FACTUAL BACKGROUND

Govindarajan has been a long-time GEICO policy holder since 2012. (Govindarajan Decl.).  Govindarajan obtained these policies when he was single, continued them in place while he was married and when he got divorced.

His ex-mother-in-law, Dr. Geeta Ganesh, is a doctor in Auckland, New Zealand, and is a co-owner of the small practice known as Rosebank Road Medical Services. (Edmondson Decl., Ex. 1). Govindarajan has a son and was divorced in 2014. *Id.* at 2. The divorce was, unfortunately, extremely contentious and hostile having significant acrimony with his in-laws, including Dr. Ganesh. *Id.*

An unknown person made defamatory internet postings on the website, RateMDs.com[1], from a period of May, 2015 to January, 2016 concerning Dr. Ganesh and Rosebank Road. (See generally, First Amended Complaint, Underlying Lawsuit, ECF 34-2[2]; Edmondson Decl, Ex.1).   Rosebank Road and Geeta Ganesh (collectively "Rosebank") sued "John Does 1-20" in San Francisco Superior Court for a sole count of defamation stating they did not know the identity of the "John Does". *Id* at 2.

In response to a solicitation and offer from Geico to sell him an umbrella policy, Govindarajan called a GEICO sales agent and obtained the Umbrella Insurance Policy on May 27, 2016.  (Govindarajan Decl The Umbrella policy covered claims of defamation. (ECF 35-1).

Dr. Ganesh and Rosebank Road amended their complaint on November 8, 2016, and named Govindarajan as a party.  He was served with the complaint in January, 2017.

---

[1] RateMDs.com is a website where people can anonymously rate doctors and dentists.  It is akin to "Yelp".

[2] While the FAC state and the moving papers imply that Govindarajan made the Posts, the jury found that found that Govindarajan was not liable.

The amended complaint did not specify any specific damages due to the alleged libel. (ECF 34-1).  Govindarajan served a statement of damages which was returned on April 4, 2017.  (Edmondson Decl, Ex. 3).   The statement of damages did not specify when the damage occurred, but claimed significant damages, for example, Dr. Ganesh claimed damages in excess of 10M.  *Id.*

Govindarajan then tendered the claim on or about May 5, 2017 to GEICO.

The statement of damages items was for a "Lost Investment Opportunity" in the amount of $ 3,450,000.00.  (Edmondson Decl, Ex 3).  Geeta Ganesh confirmed in her interrogatory responses that the Lost Investment was for a hotel sale with Shelley Payne. (Edmondson Decl, Ex 4).  Govindarajan hired a private investigator in New Zealand to investigate this transaction.  (Edmondson Decl ¶5). It was discovered that Shelly Payne first learned of the posts in June, 2016  (Id.), a month after the policy was in place

The jury returned a verdict finding Govindarajan not liable for defamation.  Rosebank appealed and Govindarajan requested that GEICO provided a defense to the appeal.  GEICO refused to defend.  (See ECF 1).  GEICO did hire "trailing counsel" to monitor the case during the entire trial. (Edmondson Decl. ¶8).

Govindarajan brought this lawsuit (ECF 1) which was stayed pending the outcome the underlying appeal. (ECF 29).   GEICO has moved for summary judgment that there was no duty to defend (ECF 33-36) and Govindarajan files this opposition.

III. **STANDARD OF REVIEW**

A grant of summary judgment is reviewed de novo. *Jesinger v. Nevada Federal Credit Union,* (9th Cir.1994) 24 F.3d 1127, 1130. The evidence is reviewed most favorably to the non-moving party. *Id.*  The insurance contract was formed in California, so California substantive law applies. *Allstate Ins. Co. v. Smith,* (9th Cir.1991) 929 F.2d 447, 449. In ruling on a motion for summary

judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, (1986) 475 U.S. 574, 587.

## IV. **ARGUMENT**

An insurer must defend its insured against claims that create a *potential* for indemnity under the policy. *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal. 4th 287, 295, 25 Cal.Rptr.2d 467, 861 P.2d 1153.  The duty to defend is broader than the duty to indemnify, and it may apply even in an action where no damages are ultimately awarded. *Horace Mann Ins. Co. v. Barbara B., (*1993) 4 Cal. 4th 1076, 1081. Further, when a complaint may be amended, there is still a duty to defend if inferences can be drawn that there is the potential for coverage. *Gov't Emps. Ins. Co. v. Nadkarni* (N.D. Cal. 2019) 391 F.Supp.3d 917, 925 citing to *CNA Casualty of California v. Seabord Surety Co*. (1986) 176 Cal. App. 3d 598, 610–611.

Determination of the duty to defend depends, in the first instance, on comparison between the allegations of the complaint and the terms of the policy. *Montrose, supra*, 6 Cal. 4th 287, 295. But the duty also exists where extrinsic facts known to the insurer suggest that the claim may be covered. (*Id.*) Moreover, that the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability. *Gray v. Zurich Insurance Co.,* (1966) 65 Cal. 2d 263, 275-76.

The duty to defend arises upon tender of a potentially covered claim and lasts until the underlying lawsuit is concluded, or until it has been shown that there is no potential for coverage. *Montrose, supra*, 6 Cal. 4th at 295.

If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage.

### A. The policy language "Occurrence" refers to Damage cause by Defamation which occurred within the policy period.

Under California law, the "clear and explicit" meaning of [insurance policy] provisions, is interpreted in their "ordinary and popular sense," which controls judicial interpretation. *Waller v. Truck Ins. Exchange, Inc.,* (1995) 11 Cal. 4th, 1, 18; Civil Code § 1638.  Moreover, insurance coverage is "'"interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] ... exclusionary clauses are interpreted narrowly against the insurer."'" *White v. Western Title Ins. Co.,* (1985) 40 Cal. 3d 870, 881, 221 Cal. Rptr. 509, 710 P.2d 309.)

   i.  <u>There was no actionable Defamation until June 2016 when Shelly Payne "googled" the Posts which influenced her opinion of Ganesh.</u>

The tort of defamation requires publication to a third party that understands the defamatory meaning of the statement. *Smith v. Maldonado* (Cal. App. 1999) 72 Cal.App.4th 637,645; see also *Sonoma Media Invs., LLC v. Superior Court of Sonoma Cnty.* (Cal. App. 2019)  34 Cal.App.5th 24,37.   While the FAC in the underlying case alleges that "Posts" were made by Govindarajan, there are no specific allegations about specific individuals who viewed the statements and understood them as defamatory.  It is only when discovery commenced that specific information about damages were provided in the statement of damages and interrogatories.   Even the discovery responses by Ganesh were not specific as to the dates of the harm.  The  evidence at trial was the testimony of Shelly Payne who saw the posts in June, 2016, which was within the policy period.

GEICO's evidence and argument only addresses the issue of "publication", or the transmission of the documents to RateMDs.com. (See Motion, ECF 33-1, page 11). GEICO simply states that publications occurred before the policy period. *Id.* But, again, publication and the tort of defamation are not synonymous. As it is the moving party's burden to provide evidence that supports their position on summary judgment, GEICO's motion fails.

GEICO's moving papers do not allege any specific dates when the defamation occurred. At no point did GEICO have any evidence to support their position that any defamation prior to the policy period. Indeed, GEICO knew or should have known the elements of the defamation tort, and had it performed its duty to investigate, it would have known there was in fact no basis to claim a tort had occurred prior the policy period. GEICO therefore had a duty to defend when the policy was tendered based on the facts know to itself at that time.

This Court must deny GEICO's motion for summary judgment as it presents absolutely no evidence that the date of defamation occurred prior to the policy period, much less that such evidence was known to it at the time it wrongly denied coverage.

    ii.    <u>The facts of this case are supported by the recent ruling in *Government Employees Insurance Company v. Nadkarni*, (N.D. Cal. 2019) 391 F.Supp.3d 917.</u>

As to the case, *Government Employees Insurance Company v. Nadkarni* (N.D. Cal. 2019) 391 F.Supp.3d 917, the policies in *Nadkarni* and in this case were the same umbrella policy issued by GEICO.

The facts in *Nadkarni* involved the insured's tender of a lawsuit pursuant to the umbrella policy. *Id.* at 922. There this Court determined that the tort,wrongfully eviction, occurred prior to the policy perio*Id.* at 927.

The logic of *Nadkarni* applied here dictates a finding of a duty to defend. Here the unrebutted evidence is the alleged tort of defamation firstoccurred when Shelly Payne "googled" and read the posts affecting her decision to do business with Dr. Ganesh.   This occurred in June 2016, which was during the policy period.

    iii.    <u>GEICO's policy differentiates between "publication" and "defamation"</u>

GEICO conflates that "publication" and "defamation", as one in the same. They are not.

GEICO's umbrella policy at paragraph 9 defines personal injury as:

> libel, slander, defamation, humiliation, or a
> publication or utterance in violation of a
> person's right of privacy not arising out of
> any business pursuit of any insured; or

GEICO's uses the terms "defamation" and "publication" both once in the umbrella policy. The point is that both are separate matters covered by the policy. No claim has ever been tendered for "publication", which per the policy must be an invasion of person's "right to privacy", the claim tendered is for coverage under defamation (here libel). No claim for invasion of privacy was ever alleged in the underlying complain, nor was a tender ever made under coverage for invasion of "privacy". GEICO differentiated between the two terms indicating that GEICO differentiated between the two acts or events.  One type of coverage is for "defamation" and the other is for "publication".

To the extent "publication" is even conceivable relevant here, the Umbrella policy has no such exclusion for prior publications. Insurers have mitigated against the risks associated with prior publications by including "prior publication" exclusions in their policies. In *St. Surfing, LLC v. Great Am. E&S Ins. Co.* (9th Cir. 2014) 752 F.3d 853, a claim was made against the carrier for

failing to defend under the policy for the insureds of the term "Streetsurfer" in marketing material. *Id.* at 859. In the *St. Surfing* case, the policy recognized the effect of "prior publications" with an exclusion that reads:

> "[Exclusion of…] '[p]ersonal and advertising injury' arising out of oral or written publication of material whose first publication took place before the beginning of the policy period." *Id.* at 859.

GEICO's policy do not have this exclusionary language. Rather the Umbrella policy affords broad coverage by not excluding past acts of publication on a temporal basis. GEICO is attempting to graft onto the policy an exclusion that does not exist.

### B. GEICO's claim that the underlying policy did not meet certain limits raises issues of contractual waiver or equitable estoppel to enforce the Umbrella Policy conditions.

GEICO argues that Govindarajan failed to comply with the "Policy's requirement to maintain residential insurance during the Policy period". (ECF 33-1, pg 14). GEICO absolutely concocts this "condition" as precluding Govindarajan from making a claim. The Policy defined primary insurance as follows:

> 11. "Primary insurance" means insurance:
> (a) for which a minimum required liability limit is shown on the declarations; and
> (b) which is payable on behalf of an insured for liability for personal injury or property damage; and
> (c) which must be maintained as a condition of this policy.

The declarations page clearly shows the auto policy as listed, thus it is manifestly a primary policy.(See ECF 35-1, pg 2).

In addition, the parties do not dispute that Govindarajan is a long-time GEICO customer and that he used GEICO's agent for making changes to his

policy, over the phone. Since GEICO's agent had a copy of the underlying policy and the umbrella policy, GEICO's agent had the capability to alert Govindarajan that more or different coverage was needed. Plaintiff understood his auto policy was an underlying policy. See Govindarajan. Dec para . Gov's understanding is buttressed by the following provisions of the policy:

> PART V - DEFENSE OF SUITS NOT COVERED BY OTHER INSURANCE
> 1. If the required primary Insurance:
> (a) is in force but does not cover property damage due to the nature of the claim against you, and this policy does coverage, we will provide defense of suits in excess of the retained limit.
> (b) is in force but does not cover property damage for any other reason, and this policy does provide to provide defense. But we are not obligated to defend unless the Injury damage alleged in the suit exceeds the required limit of primary insurance shown In Item 5. Of the declarations.

This conduct by GEICO, at the very least, raises an issue of contractual waiver or equitable estoppel. *Spray, Gould & Bowers v. Associated Internat. Ins. Co.,* (Cal. App. 1999) 71 Cal.App.4th 1260, 1267. Whether waiver or estoppel occurred is factual question that cannot be decided on summary judgment with the limited discovery to date. FRCP 56(d); Edmondson Decl ¶7. In any event, plaintiff would seek leave to amend for negligent misrepresentation or fraud since GEICO position is only sustainable if it fraudulently sold the policy, knowing it was worthless without the ostensible necessary underlying coverage.

V.  **CONCLUSION**

In view of the foregoing arguments, Plaintiff Ramji Govindarajan respectfully requests that this Court deny GEICO's motion for summary judgment.

Dated: January 6, 2020           Respectfully submitted,

                                 /s/ J. Curtis Edmondson
                                 Counsel for Ramji Govindarajan

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2020, I served a copy of the **OPPOSITION TO THE MOTION FOR SUMMARY OF JUDGMENT; DECLARATION OF J. CURTIS EDMONDSON; DECLARATION OF RAMJI GOVINDARAJAN** by CM/ECF on the following (below):

>Beau R. Mosman, #321404
>beau.mosman@mccormickbarstow.com
>McCormick, Barstow, Sheppard, Wayte & Carruth LLP
>James P. Wagoner, #58553
>jim.wagoner@mccormickbarstow.com
>7647 North Fresno Street
>Fresno, California 93720
>Telephone: (559) 433-1300
>Facsimile: (559) 433-2300
>Attorneys for Government Employees Insurance Company, aka GEICO

Dated:      January 6, 2020

/s/ J. Curtis Edmondson