UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMJI GOVINDARAJAN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>GOVERNMENT EMPLOYEE INSURANCE COMPANY,<br><br>　　　　Defendant. | Case No. 18-cv-07797-JSC<br><br>**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 33 |

Ramji Govindarajan ("Plaintiff" or "Mr. Govindarajan") sues his former insurer Government Employees Insurance Company ("GEICO" or "Defendant") for failing to defend him in a defamation action filed in California state court.[1] (Dkt. No. 1.)[2] Now before the Court is Defendant's motion for summary judgment, or in the alternative, partial summary judgment, pursuant to Federal Rule of Civil Procedure 56(a). (Dkt. No. 33.) After careful consideration of the parties' briefing, the Court concludes that oral argument is not necessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and GRANTS Defendant's motion. On this record every reasonable trier of fact would have to find that there was no duty to defend because the Policy required Plaintiff to have insurance on his primary residence as a condition to insurance coverage and it is undisputed that Plaintiff did not have such insurance at any time during the policy period.

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 9 & 13.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

**BACKGROUND**

**I.    Factual Background**

The following facts are undisputed.

**A.    The Policy**

Plaintiff purchased a GEICO "Personal Umbrella Policy" (the "Policy") on or around May 27, 2016.  (Dkt. Nos. 35 at ¶ 4 & 42 at ¶ 3.)  The Policy became effective on May 28, 2016 and covered a period of one year.  (Dkt. No. 35-1, Ex. 1 at 2.)  The Policy's declarations page lists "Minimum Required Limits of Primary Insurance" for both automobile and "primary residence."  (*See id.*)  The Policy defines "primary insurance" as insurance: "(a) for which the minimum required liability limit is shown on the *declarations*; and (b) which is payable on behalf of an *insured* for liability for *personal injury* or *property damage*; and (c) which must be maintained as a condition of this policy."  (*Id.* at 5.)

The Policy provides personal liability insurance arising out of an "occurrence," defined as "an accident or event, including a continuous or repeated exposure to conditions which results in *personal injury* or *property damage* neither expected or [sic] intended by *you*."  (*Id.* at 5.)  The Policy defines "personal injury" as including "libel, slander, [and] defamation."  (*Id.*)

The Policy's "Part V - Defense of Suits Not Covered by Other Insurance" section provides, in pertinent part:

> 1. If the required *primary insurance*:
>
>    (a) is in force but does not cover *personal injury* or *property damage* due to the nature of the claim against *you*, and this policy does provide coverage, *we* will provide defense of suits in excess of the *retained limit*.
>
>    (b) is in force but does not cover *personal injury* or *property damage* for any other reason, and this policy does provide coverage, *we* have the right to provide defense.  But we are not obligated to defend unless the *personal injury* or *property damage* alleged in the suit exceeds the required limit of *primary insurance* shown in Item 5[ ] of the *declarations*.
>
> 2. When we provide defense, *we* will:
>
>    (a) defend an *insured* against a claim or suit for damages arising out of an *occurrence*.  *We* may investigate and settle a claim or suit *we* feel is appropriate[.]

2

(*Id.* at 6.) The Policy's "Part VI – Conditions" section provides, in pertinent part:

> 2. Defense and Settlement. Except as provided in Part V., *we* are not required to take charge of the investigation, defense or settlement of a claim or suit. *We* have the right at any time to join an *insured* or the primary insurers in the investigation, defense and settlement of the claim or suit. If the *primary insurance* limit is paid, *we* have the option to defend a claim or suit.
>
> . . .
>
> 8. Policy Period and Territory. *We* cover *personal injury* and *property damage* which takes place anywhere during the time this policy is in force.
>
> . . .
>
> 14. *You* will maintain *your primary insurance* and notify *us* of any changes in *your primary insurance* within 30 days.

(*Id.* at 7-8.) Plaintiff did not maintain primary insurance on his residence at any time during the Policy.

### B.     The Underlying Defamation Action

On January 7, 2016, Dr. Geeta Murali Ganesh filed the underlying defamation action in the Superior Court of California, County of San Francisco on behalf of herself and as principal of Rosebank Road Medical Services Ltd. dba Rosebank Road Medical Centre ("Rosebank"). (Dkt. No. 34-1, Ex. A.)[3] Rosebank is a "primary healthcare service center based in Auckland, New Zealand." (*Id.* at 3, ¶ 1.) The complaint brought a single claim for defamation, alleging that unknown Doe defendants had "published numerous fake reviews about Rosebank and Dr. Ganesh" on www.ratemds.com ("RateMDs"), a website that allows users to provide reviews and comments on medical facilities and medical professionals. (*Id.* at 3, ¶¶ 6-7; 6, ¶¶ 26-29.) The complaint alleged that the defendants began publishing the "false and defamatory reviews" on Rate MDs in October 2014, and that the reviews were intended to "exact revenge" on Dr. Ganesh

---

[3] The Court grants Defendant's unopposed request for judicial notice of documents filed in the underlying state court action. *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that judicial notice is appropriate for "undisputed matters of public record, including documents on file in federal or state courts") (internal citation omitted); *see also Bennet v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002) (recognizing that courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

3

1  based on "a dispute with Dr. Ganesh and/or her family members" unrelated to her medical

2  practice. (*Id.* at 6, ¶¶ 30-32.)

3        Dr. Ganesh and Rosebank filed a first amended complaint on November 8, 2016, naming

4  Mr. Govindarajan—her ex son-in-law—as a defendant, along with "Does 2-20." (Dkt. No. 34-2,

5  Ex. B at 3, ¶ 4.) The amended complaint repeats the substantive allegations in the original

6  complaint but alleges that the alleged defamatory reviews were first published on RateMDs in

7  May 2015. (*See id.* at ¶ 5.) The amended complaint further alleges that Mr. Govindarajan and Dr.

8  Ganesh's daughter "were previously married" and were "currently involved in a protracted and

9  acrimonious custody battle," and that the "family dispute" was the impetus for the defamatory

10  posts. (*Id.* at 6, ¶¶ 29-34.) The amended complaint asserts a single claim for defamation.

11        The case was tried before a jury, and on January 10, 2018, the jury returned a verdict in

12  favor of Mr. Govindarajan. (Dkt. No. 34-9, Ex. I.) The jury found that he did not make any of the

13  22 defamatory RateMDs posts at issue in the action. (*See id.* at 3-5.) The court entered judgment

14  in favor of Mr. Govindarajan in February 2018. (Dkt. No. 34-10, Ex. J.) Dr. Ganesh and

15  Rosebank filed an appeal and the California Court of Appeal affirmed the judgment in August

16  2019. (Dkt. No. 34-12, Ex. L.)

17      **C.**    **Plaintiff's Claim Under the Policy and GEICO's Investigation**

18        On May 5, 2017, Plaintiff filed a claim under the Policy seeking coverage related to the

19  underlying action, indicating that he was served with the complaint on January 15, 2017. (Dkt.

20  No. 35-2, Ex. 2 at 2-3.) GEICO Claims Attorney Michael A. Stodghill was assigned to investigate

21  the claim. (Dkt. No. 35 at ¶¶ 1, 5.) Mr. Stodghill called Plaintiff on May 9, 2017 and

22  "subsequently checked GEICO's records" to determine the status of Plaintiff's other GEICO

23  policies. (*Id.* at ¶ 6.) Mr. Stodghill discovered that Plaintiff had personal automobile insurance

24  but no primary residence insurance. (*Id.*)

25        Mr. Stodghill called Plaintiff's counsel, Mr. Edmondson, the following day to discuss the

26  claim, and then reviewed the first amended complaint in the underlying action. (*Id.* at ¶ 7.) Mr.

27  Stodghill emailed Mr. Edmondson later that morning and requested documents regarding the

28  specific RateMDs posts at issue. (*Id.* at ¶ 8; *see also* Dkt. No. 35-4, Ex. 4 at 2.) Mr. Stodghill's

email also stated his understanding that Plaintiff "did not maintain any primary homeowner's or renter's insurance" at the time of the incident. (*Id.*) Mr. Edmondson responded by email that day, stating that, "[a]s for other insurance policies, [he] believe[d] that there is only the auto policy." (Dkt. No. 35-4, Ex. 4 at 2.) Mr. Edmondson's email also included a copy of a report generated by RateMDs Inc.'s Chief Legal Officer regarding the date, time, and content of the RateMDs posts at issue in the underlying action ("RateMDs Report"). (*Id.* at ¶ 8; *see also* Dkt. No. 35-4, Ex. 4.)

After conducting his investigation Mr. Stodghill "determined that the RateMDs Report showed that the defamatory reviews at issue in the Underlying Action were all published between the dates of June 5, 2015 to January 17, 2016," and that the first amended complaint referenced one date—'May 2015.'" (Dkt. No. 35 at ¶ 10.) Mr. Stodghill also determined that Plaintiff failed to maintain the required primary insurance on his primary residence during the Policy period. (*Id.* at ¶ 12.)

**D.     GEICO Declines to Defend in the Underlying Action**

On May 30, 2017, GEICO issued a letter to Mr. Edmondson detailing Mr. Stodghill's investigation into the facts of the underlying action (including the RateMDs Report) and conveying its coverage decision. (*Id.* at ¶ 13; *see also* Dkt. No. 35-6, Ex. 6.) The letter states, in pertinent part:

> [A]t this time, GEICO will not be providing Mr. Govindarajan with a legal defense to the lawsuit per the Umbrella Policy's terms and conditions. GEICO will be having separate counsel monitor the lawsuit on behalf of GEICO. GEICO reserves the right to later join in the defense of the lawsuit.

(Dkt. No. 35-6, Ex. 6 at 2.) The letter states that GEICO was reserving its rights in part pursuant to Condition 8 of the Policy:

> Per Condition 8, the Umbrella Policy is an occurrence policy that covers a covered "personal injury" or "property damage" that takes place during the time the Umbrella Policy was in force. The Lawsuit alleges numerous, very specific, defamatory statements made that are the basis for the Lawsuit. The information we have received indicates that all of those statements were made and posted to the Website before the Umbrella Policy's inception date of May 28, 2016. To the extent the claim and Lawsuit are based on allegations of "personal injury" or "property damage" that occurred before the Umbrella Policy's inception, they are not covered by the Umbrella Policy.

5

(*Id.* at 7.) The letter also notes that Plaintiff failed to carry the required primary insurance, and states:

> Per Condition 2, we are not required to defend a suit except as provided in Part V, though we have the right to join in the defense at any time. Part V, in turn, provides that we will defend an insured in suits in which the primary insurance is in force, but does not cover the personal injury or property damage for certain specified reasons. Part V does not require us to defend an insured in a lawsuit when the insured does not carry the required primary insurance at all. Therefore, in accordance with Condition 2 and Part V, GEICO will not be providing Mr. Govindarajan a legal defense to the Lawsuit at this time.

(*Id.* at 8.) Mr. Edmondson responded by letter dated June 3, 2017, asserting that GEICO denied coverage in bad faith because the first amended complaint in the underlying did not include "the dates of the allegedly defamatory posts," and the extrinsic evidence did not "conclusively establish that no coverage exists." (Dkt. No. 35-7, Ex. 7 (emphasis omitted).) Mr. Edmondson also asserted that the Policy's requirement that Plaintiff maintain primary insurance rendered the Policy "worthless at the time it was sold" because GEICO did not confirm with Plaintiff that he carried the required insurance before selling him the Policy. (*Id.* at 2.) GEICO responded by letter dated June 12, 2017, addressing Mr. Edmondson's arguments and confirming its decision to decline to defend Plaintiff in the underlying action. (Dkt. No. 35-8, Ex. 8.)

Because GEICO asserted reservations of rights as to the defamation claim in the underlying action, it assigned "monitoring counsel" to attend the trial "in the event that the evidence . . . showed that the allegedly defamatory posts were published during the policy period." (Dkt. No. 43-1 at ¶ 2.) Plaintiff spent over $350,000 in defending the underlying action. (Dkt. No. 41 at ¶ 8.)

**II. Procedural History**

Plaintiff filed his complaint in December 2018, bringing claims for: (1) breach of the implied covenant of good faith and fair dealing – failure to defend; (2) declaratory relief; and (3) breach of contract – failure to defend. (Dkt. No. 1 at ¶¶ 15-31.) Defendant timely answered the complaint, (Dkt. No. 7), and moved for summary judgment in May 2019, (Dkt. No. 22). The parties then filed a joint stipulation to stay the case pending the appeal in the underlying action,

6

1    which the Court granted, (Dkt. No. 30).  The Court granted the parties' stipulation to lift the stay
2    in November 2019, (Dkt. No. 32), and Defendant refiled its motion for summary judgment
3    thereafter, (Dkt. No. 33).  The motion is fully briefed, (*see* Dkt. Nos. 40 & 43).

## DISCUSSION

California law applies to this diversity action.  *See Travelers Prop. Cas. Co. of Am. v. ConocoPhillips Co.*, 546 F.3d 1142, 1145 (9th Cir. 2008) (applying California law to interpret insurance policy).  Plaintiff, as the insured, "has the burden of establishing that a claim, unless specifically excluded, is within basic coverage, while the insurer has the burden of establishing that a specific exclusion applies."  *Minkler v. Safeco Ins. Co. of Am.*, 49 Cal. 4th 315, 322 (2010).  All of Plaintiff's claims are premised on Defendant's alleged duty to defend him in the underlying action.  Thus, for Plaintiff to prevail on his claims at trial he must first demonstrate that Defendant had a duty to defend under the Policy's terms.

### A.    Duty to Defend Generally

An "insurer owes a broad duty to defend its insured against claims that create a potential for indemnity."  *Montrose Chem. Corp. v. Sup. Ct.*, 6 Cal. 4th 287, 295 (1993).  Thus, insurers "must defend a suit which potentially seeks damages within the coverage of the policy."  *Id.* (emphasis, quotation marks, and citation omitted.)  "The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint [in the underlying action] with the terms of the policy."  *Id.*  Further, "[f]acts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy."  *Id.*  There is no duty to defend, however, where "it has been shown that there is *no* potential for coverage."  *Id.*

### B.    Defendant did not Have a Duty to Defend

Every reasonable trier of fact would have to find that there was no potential for coverage, and therefore Defendant did not have a duty to defend, because Plaintiff did not maintain insurance on his primary residence as required for coverage under the Policy.  As previously discussed, the Policy states that "***Primary Insurance***" means insurance:

(a) for which a minimum required liability limit is shown on the ***declarations***; and

      (b) which is payable on behalf of an *insured* for liability for *personal injury* or *property damages*; and

      (c) which must be maintained as a condition of this policy.

(Dkt. No. 35-1, Ex. 1 at 5.) The "declarations" referred to in subsection (a) state that the minimum required liability limit of primary insurance is $300,000 on Plaintiff's primary residence and a similar amount on Plaintiff's automobile. (*Id.* at 2.) The definition of "Primary Insurance" unambiguously states that the minimum required liability limit set forth on the declarations page "**must be maintained as a condition**" of the Policy. Further, the Policy's "Defense of Suits Not Covered by Other Insurance" section states that GEICO will provide a defense "[i]f the required *primary insurance* . . . is in force." (*Id.* at 6.) The "Conditions" section of the Policy provides, in pertinent part, that "[i]f the *primary insurance* limit is paid," GEICO has "the option to defend a claim or suit." (*Id.* at 7.) The "Conditions" section also provides: "*You* will maintain your *primary insurance* and notify *us* of any changes in your *primary insurance* within 30 days." (*Id.* at 8.) Therefore, a condition to Plaintiff receiving benefits under the Policy was that he maintain insurance on his primary residence. There is no dispute that Plaintiff did not carry any insurance on his primary residence at any time during the Policy period. Thus, under the Policy's plain terms, Plaintiff did not meet the requirements for defense coverage. *See N. Am. Capacity Ins. Co. v. Claremont Liab. Ins. Co.*, 177 Cal. App. 4th 272, 287-90 (2009) (upholding no insurance coverage where insured had not satisfied conditions to coverage).

      Plaintiff does not dispute that he was required to maintain "primary insurance" as a condition to coverage under the Policy; instead, he appears to argue that he satisfied this condition by maintaining an automobile policy which he understood was the only primary insurance required. But the declarations page states that the minimum required liability limit for primary insurance applies to insurance for his automobile **and** insurance for his primary residence. The Policy cannot reasonably be read any other way. *See Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18–19 (1995), *as modified on denial of reh'g* (Oct. 26, 1995) ("Courts will not strain to create an ambiguity where none exists"). Further, "to the extent [Plaintiff's] understanding of the policy is contrary to its explicit language, [his] subjective intent is not relevant." *Hervey v. Mercury Cas.*

*Co.*, 185 Cal. App. 4th 954, 965 (2010); *see also Hackethal v. Nat'l Cas. Co.*, 189 Cal. App. 3d 1102, 1112 (1987) ("It is a general rule that the receipt of a policy and its acceptance by the insured without an objection binds the insured as well as the insurer and *he cannot thereafter complain that he did not read it or know its terms*.") (internal quotation marks and citation omitted).

Plaintiff's reliance on *Spray, Gould & Bowers v. Associated Intern'l. Ins. Co.*, 71 Cal.App.4th 1260, 1267 (1999,) for the proposition that Defendant's conduct "raises an issue of contractual waiver or equitable estoppel" is misplaced. First, and dispositively, the Policy does not obligate Defendant to defend in cases where the primary insurance is not in force. (Dkt. No. 35-1, Ex. 1 at 6.) Plaintiff cannot assert the equitable doctrines of waiver and estoppel to establish coverage where none exists. *See Advanced Network, Inc. v. Peerless Ins. Co.*, 190 Cal. App. 4th 1054, 1066 (2010) ("The rule is well established that the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom . . . .") (internal quotation marks and citation omitted) (collecting cases).

Second, even if waiver or estoppel could apply, the burden is on Plaintiff to prove those claims. *See Waller*, 11 Cal. 4th at 31 ("The burden . . . is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and 'doubtful cases will be decided against a waiver' [citation].") (alteration in original). Plaintiff's opposition makes no effort to identify the evidence in the record that could support a finding in his favor on waiver or estoppel; indeed, his opposition does not even identify what he must prove. In any event, he does not even allege that he spoke to or communicated directly with any GEICO agent. Assuming that he could allege a conversation with an agent, as opposed to merely applying online, at most he alleges that the agent should have known that his insurance on his primary residence had lapsed and therefore should have told Plaintiff that he had to reinstate it or obtain other primary residence insurance. (Dkt. No. 42.) This evidence does not support a finding of waiver or estoppel, even assuming those doctrines could create coverage where none exists. Plaintiff's fleeting reference to Federal Rule of Civil Procedure 56(d) and paragraph seven of

counsel's declaration is likewise insufficient as he has had more than enough time to develop the record to support waiver or estoppel, if such a record could be developed (and there is nothing in this record that suggests that it could). *See Pfingston v. Ronan Eng'g Co.,* 284 F.3d 999, 1005 (9th Cir. 2002).

In sum, as it is undisputed that Plaintiff did not have insurance on his primary residence at any time during the Policy period, and as such insurance was unambiguously a condition to any coverage under the Policy, Defendant has met its burden of showing that it is entitled to judgment as a matter of law on Plaintiff's claims. In light of this ruling, the Court need not address Defendant's other argument for summary judgment.

### C.     Leave to Amend is Denied

Finally, Plaintiff requests "leave to amend [to allege] negligent misrepresentation or fraud since GEICO['s] position is only sustainable if it fraudulently sold the policy, knowing it was worthless without the ostensible necessary underlying coverage." (Dkt. No. 40 at 10.) Ordinarily, Federal Rule of Civil Procedure 15(a)'s liberal standard applies to a plaintiff's request for leave to amend. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992). However, once a district court enters a pretrial scheduling order under Rule 16 that "establishe[s] a timetable for amending pleadings," that Rule's "good cause" standard controls. (*Id.* at 607-08.) Under Rule 16(b), the plaintiff must first show "good cause" for amendment, and if he does so, must then "demonstrate that amendment [is] proper under Rule 15." *Id.* at 608.

The Court issued a pretrial scheduling order on March 28, 2019 setting August 1, 2019 as the deadline to move to amend the pleadings. (Dkt. No. 20 at 1.) Defendant filed its original motion for summary judgment in May 2019 and the action was then stayed a month later. In November 2019 the parties stipulated to lift the stay and set a briefing schedule for Defendant to re-file its motion for summary judgment. The stipulation said nothing about amending any other dates in the pretrial scheduling order. Because the Court has issued a pretrial scheduling order, it applies Rule 16(b).

"Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good

10

cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609 (internal quotation marks and citation omitted). "Good cause" is shown if the pretrial order's deadline could not be met "despite the party's diligence." *Id.* "[T]he focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.*

Here, Plaintiff fails to show reasonable diligence. He has known since May 2017 the grounds for Defendant's denial of defense coverage under the Policy. Plaintiff filed his complaint in December 2018 and did not allege fraud or negligent misrepresentation. Plaintiff likewise knew in May 2019 the grounds for Defendant's motion for summary judgment—the same grounds asserted in the refiled, instant motion—and the parties did not stipulate to a stay until three weeks later. Finally, the parties stipulated to a briefing schedule regarding the instant motion in November 2019 after the Court granted their stipulation to lift the stay. At no time did Plaintiff move for leave to amend the complaint between the lifting of the stay on November 14, 2019 and the filing of his opposition on January 6, 2019. Thus, the Court finds Plaintiff's belated, one sentence request for leave to amend fails to establish "good cause" for modifying the pretrial scheduling order.

### D. Evidentiary Objections

Defendant's reply briefing includes an attachment entitled "Evidentiary Objections" that objects on various grounds to the declarations of Plaintiff and his counsel, Mr. Edmonds. (Dkt. No. 43-2.) Defendant's evidentiary objections do not comply with the Civil Local Rules. Under Local Rule 7-3(c), any evidentiary objections "to the opposition must be contained within the reply brief or memorandum." Defendant's objections are not contained within the reply brief but are instead included as an attachment to same. Accordingly, the Court declines to consider Defendant's separate "Evidentiary Objections" and "will only address the evidentiary arguments to the extent they are raised" in Defendant's reply brief. *See Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1119 (N.D. Cal. 2011) (denying the defendant's separately-filed motion to strike based on a similar violation of Local Rule 7-3(c)), *abrogated on other grounds by Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018).

//

**CONCLUSION**

It is undisputed that the unsuccessful defamation lawsuit Plaintiff's former in-laws pursued against him extracted a heavy financial toll. For the reasons stated above, however, it is also undisputed that Plaintiff did not satisfy the conditions to obtaining insurance coverage from Defendant for the defense of that lawsuit. Accordingly, the Court GRANTS Defendant's motion for summary judgment.

The Order disposes of Docket No. 33.

**IT IS SO ORDERED.**

Dated: February 5, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge